IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Matthew Funk,<br><br>  Plaintiff,<br><br>vs.<br><br>Dora B. Schriro, et al.,<br><br>  Defendants. | No. CV 08-0739-PHX-GMS (JCG)<br><br>**ORDER** |

Plaintiff Bryan Matthew Funk brought this civil rights action under 42 U.S.C. § 1983 against Dora B. Schriro, former Arizona Department of Corrections (ADC) Director; and Bennie H. Rollins, former ADC Operations Director (Doc. #1). Before the Court is Defendants' Motion for Summary Judgment (Doc. #44), which is fully briefed (Doc. ##53, 60).

The Court will grant the motion and terminate the action.

**I.   Complaint**

In his Complaint, Plaintiff set forth three Counts against Defendants claiming failure to protect, threat to safety, and mental anguish in violation of his Eighth and Fourteenth Amendment rights (Doc. #1 at 4-6). Plaintiff's claims stem from his identification as a snitch in various ADC housing units and Defendants' alleged failure to place him in protective segregation (PS) despite ongoing threats to Plaintiff's life (id.). Plaintiff requested PS status in March 2005, July 2006, and December 2006, following

incidents where he felt his life was in danger (id.; Doc. #45, Defs.' Statement of Facts (DSOF) ¶¶ 40, 53, 61; Doc. #54, Pl.'s Statement of Facts (PSOF) ¶¶ 40, 53, 61). All of his requests for PS were denied; instead, each time, officials determined that alternative placement in another unit was appropriate (Doc. #1 at 4).

In his response to Defendants' summary judgment motion, Plaintiff clarified that his lawsuit is based only on the December 2006 denial of PS status and that the facts related to the two prior PS requests simply provide background for the claim that arose in December (Doc. #53 at 1, 3). See Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008) (subsequent filings and responsive pleadings may be necessary for a pro se plaintiff to refine and clarify his factual allegations and legal theories).

**II.     Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). But Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. If the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

### III. Motion for Summary Judgment

#### A. Facts

In support of their motion, Defendants submit a separate Statement of Facts with extensive facts on the PS review process, which is governed by the ADC policy entitled Director's Instruction (DI)-67 (Doc. #45, DSOF ¶¶ 9-39). They also submit detailed facts outlining Plaintiff's PS requests in March 2005, July 2006, and December 2006 (id., DSOF ¶¶ 40-78).[1] Plaintiff's separate Statement of Facts consists of facts corresponding to each of DSOF (Doc. #54, PSOF ¶¶ 9-78). See LRCiv 56.1(b). As articulated above, Plaintiff's claim is based on the December 2006 PS request and denial. The Court will

---

[1] Defendants' facts are, in large part, supported by the declaration of Evangeline Chatt, which was submitted with Defendants' response to Plaintiff's Motion for Preliminary Injunction and incorporated by reference into the DSOF (Doc. #14, Ex. A, Chatt Decl. ¶ 1; Doc. #45, DSOF ¶ 9). Chatt, a CO IV assigned to the PS Unit, describes the details of Plaintiff's DI-67 investigations, and her declaration is supported by copies of the relevant DI-67 documents (Doc. #14, Ex. A, Attachs. 1-53).

therefore summarize only those facts that provide the background to Plaintiff's claim.

That said, the following facts, except as otherwise noted, are undisputed.

### *1. Director's Instruction (DI)-67—Protective Segregation Policy*

The DI-67 process governs PS and provides procedures for identifying inmates with legitimate protection needs (DSOF ¶ 10; PSOF ¶ 10).[2] The greatest degree of protection is PS status—placement in a unit that houses inmates with safety concerns (DSOF ¶ 12; PSOF ¶ 12). Defendants submit that alternatives to PS status include a transfer to a different unit away from inmates who have been identified as threats or a transfer to a unit specifically designated for vulnerable inmates, such as convicted sex offenders (DSOF ¶¶ 13, 15).

When an inmate requests PS, he is isolated and interviewed, and officials must complete various PS documents, which are forwarded to the Deputy Warden, who reviews the documents and determines whether a full DI-67 process is required (id. ¶¶ 16-20; PSOF ¶¶ 16-20). If a full DI-67 process is required, the Criminal Investigation Unit (CIU) conducts a more complete investigation and then sends its report back to the Deputy Warden (DSOF ¶¶ 24-31; PSOF ¶¶ 24-31). The Deputy Warden determines whether there exists a verifiable threat and makes a recommendation, which is forwarded to the Warden, who also makes a recommendation (DSOF ¶¶ 33-34; PSOF ¶¶ 33-34). The Warden then forwards the file for review by the PS Committee, who makes the decision on PS placement (DSOF ¶¶ 34-35; PSOF ¶¶ 34). The PS Committee's decision is appealable to the Division Director for Prison Operations, whose decision is final (DSOF ¶ 37). Each one of these stages in the DI-67 process is fully documented (Doc. #14, Ex. A., Chatt Decl. ¶ 26).

### *2. Plaintiff's History*

After Plaintiff was charged with second degree murder, he cooperated with police

---

[2] A copy of the DI-67 policy is attached to Chatt's declaration (see Doc. #14, Ex. A, Attach. 1).

and voluntarily gave statements, which led to the arrest of his two co-defendants (see Doc. #13 at 2 (Order setting out detailed background facts)). Plaintiff was ultimately convicted of second-degree murder and sentenced to 21 years in prison, and his co-defendants were each sentenced to 20 years in prison (see id.).

In March 2005, Plaintiff was housed in the general population unit at the Arizona State Prison Complex (ASPC)-Lewis Buckley Unit when he claims that information was disseminated among inmates showing that Plaintiff had worked with police (id.; DSOF ¶ 40; PSOF ¶ 40). Plaintiff asserted that he was warned that he was going to be stabbed, so he requested PS (see Doc. #13 at 2). The Deputy Warden determined that a full-PS review was required (DSOF ¶¶ 42-43; PSOF ¶¶ 42-43). Following CIU's investigation, the Deputy Warden added an inmate to Plaintiff's Do Not House With (DNHW) list and recommended alternative placement (DSOF ¶¶ 45-46; PSOF ¶¶ 45-46). In July 2005, the Warden agreed with that recommendation and noted that the evidence supported Plaintiff's claim that he was known as a snitch in the Buckley Unit (DSOF ¶ 47; PSOF ¶ 47). The next month, the PS Committee approved alternative placement (DSOF ¶ 50).

Thereafter, on September 6, 2005, Plaintiff was transferred to the Lewis-Barchey Unit (DSOF ¶ 52). Plaintiff claimed that after a few months at the Barchey Unit, he was identified as a snitch and chased out of his living area by two inmates with locks and razors (Doc. #7 at 5 (Pl.'s Mot. for Prelim. Inj.)). On July 12, 2006, Plaintiff again requested PS (id.; DSOF ¶ 53). The Deputy Warden determined that a full DI-67 review was not required as this incident was isolated to the Barchey Unit (DSOF ¶ 56). Names were added to Plaintiff's DNHW list, but PS was denied; it was determined that Plaintiff would be moved to another unit (id. ¶¶ 56, 60).

### *3. December 2006 PS Request*

That led to Plaintiff's December 13, 2006 transfer to general population at the Central Unit in Florence, Arizona (id. ¶ 60). Plaintiff claimed that four days after his arrival at the Central Unit, inmates in general population learned of Plaintiff's status as a

snitch (Doc. #7 at 5). On December 17, an inmate attempted to stab Plaintiff and left a deep scratch on Plaintiff's stomach (id. at 6). Another inmate, who was working as a porter, stabbed Plaintiff in the arm with a "shank on the end of a broom handle" (id.; DSOF ¶ 61; PSOF ¶ 61). An officer discovered that Plaintiff was bleeding, and Plaintiff was taken to the hospital (id.; Doc. #7 at 6).

The next day, Plaintiff made his third request for PS (id.; DSOF ¶ 62; PSOF ¶ 62). He was isolated and interviewed, and he provided a written statement (DSOF ¶ 62; PSOF ¶ 62). Defendants assert that in his statement, Plaintiff indicated that he was a New Mexican Mafia gang member and he was a target due to a split in that gang (DSOF ¶ 63). Plaintiff states that the basis of his PS request was that he had been identified as a snitch (PSOF ¶ 63). The Deputy Warden determined that full DI-67 was warranted (DSOF ¶ 64; PSOF ¶ 64). Following CIU's investigation, the Deputy Warden and Warden recommended alternative placement (DSOF ¶¶ 67-68; PSOF ¶¶ 67-68). In May 2007, the PS Committee decided that PS was not required and, despite the recommendations for alternative placement, the PS Committee determined that Plaintiff could be housed in a different cell block within the same unit (DSOF ¶ 70). On May 22, 2007, Plaintiff appealed the PS denial (id. ¶ 72; PSOF ¶¶ 70, 72).

As part of the appeal, Rollins reviewed Plaintiff's entire PS file, which included information generated by the December PS request as well as his two prior PS requests (DSOF ¶ 74; PSOF ¶ 74). Plaintiff averred that during this period, he and his mother wrote to Schriro requesting that he not be returned to general population and Schriro spoke to Plaintiff's mother on the telephone (PSOF ¶¶ 73, 5).

On June 20, 2007, Rollins affirmed the decision to deny PS, but he modified the decision to accord with the Deputy Warden and Warden's recommendations—that Plaintiff be alternately placed out of Central Unit to another maximum-custody unit (id.). Plaintiff wrote to Rollins to explain his disagreement with Rollins' PS-appeal response (DSOF ¶ 76; PSOF ¶ 76). Plaintiff's letter was received in the Northern Region

Operations office in July 2007; however, Rollins does not remember the letter (DSOF ¶ 76), and Plaintiff did not receive any response to the letter (PSOF ¶ 76).

Pursuant to Rollins' decision, Plaintiff was housed in CB 6 (Doc. #14, Ex. A, Chatt Decl. ¶ 67). Defendants state that on May 31, 2008, Plaintiff was involved in a fight with another inmate (id. ¶ 69). Plaintiff states that on this date, he was assaulted while attending recreation (Doc. #53 at 6).

It turns out that prior to this incident, in February 2008, CB 6 had been redesignated as part of Central Unit, and under Rollins' order, Plaintiff was not to be housed in Central Unit (Doc. #14, Ex. A, Chatt Decl. ¶¶ 67, 75). This oversight was not realized until July 2008; on July 24, 2008, Plaintiff was transferred to Special Management Unit (SMU) I (id. ¶¶ 75-76).

### B. Parties' Contentions

#### 1. Defendants' Motion

Defendants move for summary judgment on the grounds that (1) Plaintiff's claim stemming from his March 1, 2005 PS request is barred by the statute of limitations, (2) Plaintiff's claims stemming from the March 1, 2005 and July 12, 2006 PS requests must be dismissed for nonexhaustion under the Prison Litigation Reform Act, (3) there was no constitutional violation by either Defendant, (4) punitive damages are not warranted, and (5) the Eleventh Amendment bars damages against Defendants in their official capacity (Doc. #44).

With respect to Schriro's liability, Defendants argue that she had no personal involvement with the alleged violation (id. at 10). They cite to state law, which provides that the ADC Director may delegate administrative functions and duties to appropriate personnel (id.). Defendants submit that Schriro delegated all responsibility related to PS and the DI-67 process; therefore, she was not part of the chain of command involved in Plaintiff's PS decisions (id.). They further argue that Schriro did not personally receive or review letters addressed to her by Plaintiff; those letters were received by the Offender

1  Operations office and responded to by ADC staff (id.). For these reasons, Defendants
2  maintain that Schriro was not deliberately indifferent to Plaintiff's safety (id.).

3  Defendants contend that there is also no evidence that Rollins was deliberately
4  indifferent to Plaintiff's safety (id. at 11-12). They explain that in addressing Plaintiff's
5  appeal of the PS denial, Rollins examined Plaintiff's entire PS file and reviewed all of the
6  relevant information, including that generated by the prior PS requests (id. at 11).
7  Defendants note that Rollins' response to the appeal identified the information pertinent
8  to his decision to uphold the PS denial. The determining factors included: (1) CIU's
9  conclusion that there was no corroboration to Plaintiff's claim that there was a "hit" on
10 him or a state-wide threat to his safety, (2) Plaintiff's appeal provided no new information
11 raising safety concerns, (3) the inmate who assaulted Plaintiff at the Central Unit was not
12 identified nor was the basis for that assault, and (4) all inmates identified as threats were
13 placed on Plaintiff's DNHW list (id.). Defendants argue that Rollins made sure that
14 Plaintiff was transferred to another maximum custody unit but otherwise concluded that
15 Plaintiff was not at significant risk for assault and that PS was unnecessary (id. at 11).

16 As to Plaintiff's claim under the Fourteenth Amendment, Defendants assert that
17 Plaintiff's allegations fail to support a due process claim because he did not allege the
18 denial of procedural protections; rather, he complains about the results of the process (id.
19 at 12).

20 Defendants' motion is supported by the declarations of Chatt, Schriro, and Rollins
21 and various attachments thereto (Doc. #14, Ex. A, Attachs.; Doc. #45, Exs. B-C,
22 Attachs.), and a copy of Plaintiff's Adult Information Management Systems report (Doc.
23 #45, Ex. A).

### 2. *Plaintiff's Response*[3]

---

[3] The Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), which informed Plaintiff of his obligation to respond to Defendants' motion (Doc. #47).

- 8 -

In response to Defendants' claim that neither Defendant acted with deliberate indifference, Plaintiff argues that both Schriro and Rollins had knowledge of the continuous threat to Plaintiff's safety and had the opportunity and obligation to protect Plaintiff but failed to do so (Doc. #53).

Plaintiff contends that Schriro had knowledge of the threats to Plaintiff's safety because Plaintiff's mother spoke directly with Schriro in a telephone conversation during the second week of June 2007—before Rollins' response to the appeal (Doc. #53 at 4). Plaintiff states that this telephone call put Schriro on notice of the threat to Plaintiff's safety and that he had already been stabbed (id. at 8).

Plaintiff argues that Rollins had prior knowledge of the threat to Plaintiff's safety because he reviewed Plaintiff's complete PS file, which contained information about the prior PS requests (id. at 4). Plaintiff argues that Rollins was clearly not competent to perform his function in the appeal process because, contrary to Rollins' conclusions, there was evidence (1) showing that Plaintiff was on a hit list and (2) identifying the basis for the prior assault against him and the identity of the assailant (id. at 1-2; Exs. B-C). Plaintiff maintains that in light of his multiple unsuccessful alternative placements and continued identification as a snitch, Rollins' decision to uphold the PS denial was contrary to the DI-67 policy, which instructs officials that they need not exhaust all possible alternate placement options before authorizing PS status, particularly when previous alternate placements have failed (id. at 5, citing DO 805.03 § 1.4.3.2). Plaintiff argues that Rollins, aware that Plaintiff was stabbed after the previous PS denial, made a deliberate choice to jeopardize Plaintiff's safety by placing him back in general population (id. at 11-12).

In support of his Fourteenth Amendment claim, Plaintiff argues that Defendants denied and continue to deny him adequate procedural protections by repeatedly placing him in general population, which poses a threat to his life, and by failing to abide by their own policy to protect him (id. at 12).

1    Plaintiff submits an excerpt from his state-court trial transcript (Doc. #53, Ex. A);
2    copies of ADC and PS forms and appeal documents (id., Exs. B-C, H); the affidavit of
3    Elisa Millsap, Plaintiff's mother, with attachments (id., Ex. D1); a copy of the
4    disciplinary report of the May 31, 2008 incident (id., Ex. F); and a copy of Rollins' job
5    description (id., Ex. G).

### 3. *Defendants' Reply*

Defendants reply that the evidence indicating that Plaintiff was on a hit list is a March 23, 2008 information report; thus, Rollins did not have that information to review when he responded to Plaintiff's appeal in June 2007 (Doc. #60 at 1-2). Defendants also assert that Rollins' error in stating that Plaintiff's assailant had not been identified when, in fact, he had been, does not amount to deliberate indifference (id. at 2). They note that this was just one factor supporting the appeal response (id.).

Defendants assert that "assuming, without conceding, that Schriro had spoken to [Plaintiff's] mother," it does not show that Schriro had any involvement with Plaintiff's PS process or ultimate housing assignment (id.). And they claim that there is no evidence that Rollins knew of this alleged telephone conversation (id.).

Defendants argue that despite Plaintiff's claims that Rollins was not competent to make a decision regarding PS, Rollins' decision comported with the Deputy Warden's and Warden's recommendation and three PS Committee members' decision to deny PS and assign alternative placement (id.). They reiterate that Rollins reviewed Plaintiff's entire PS file and his previous PS requests and concluded that Plaintiff was not at a significant risk for assault (id.).

Defendants also reassert their arguments on the Fourteenth Amendment, punitive damages, and Eleventh Amendment immunity (id. at 3).

## IV.   Analysis

### A.   Statute of Limitations and Exhaustion

As stated, Plaintiff's claim stems from the December 2006 PS denial. Plaintiff

brings no independent claims as a result of the 2005 and July 2006 PS denials (see Doc. #53 at 1). Because Defendants' statute-of-limitations and exhaustion arguments relate only to these prior events, they provide no basis for summary judgment on Plaintiff's pending claim.

### B. Eighth Amendment

#### *1. Legal Standard*

The Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). When prison officials transfer an inmate who alleges that his well-being will be in jeopardy, their action constitutes an Eighth Amendment violation only if it can be shown that prison "officials acted with 'deliberate indifference' to the threat of serious harm or injury by another prisoner." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (citations omitted); see also Redman v. County of San Diego, 942 F.2d 1435, 1449 (9th Cir. 1991) (en banc). The decision to transfer must display "deliberate indifference" to the inmate's personal security. See Redman, 942 F.2d at 1449. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837. Therefore, to establish a violation, a prisoner must first satisfy an objective requirement—he must show that he has been transferred into "conditions posing a substantial risk of serious harm." Id. at 834. Then, he must satisfy a subjective requirement—he must show that the defendant was aware of the risk and disregarded it. Farmer, 511 U.S. at 834, 837.

An inmate need not wait until he is actually assaulted to bring an Eighth Amendment claim. See id. at 845. Farmer did not address the point at which a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes. Id. at 834 n. 3. But the Ninth Circuit has found that the "mere threat" of future bodily harm to a

prisoner may not provide a basis for a cognizable Eighth Amendment claim. See <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987).

### *2. Rollins*

To demonstrate deliberate indifference, Plaintiff must first show that Rollins' decision to deny the PS appeal resulted in Plaintiff's exposure to conditions posing a substantial risk of serious harm. Following Rollins' response to the appeal, Plaintiff was placed in CB 6. At that time, CB 6 was a maximum custody unit separate from Central Unit, where the stabbing incident occurred. Further, Plaintiff was placed apart from those inmates on his DNHW list (see Doc. #14, Attach. 44). As stated, Plaintiff need not wait until he is actually assaulted to establish an Eighth Amendment claim; however, he nonetheless must proffer some evidence from which a reasonable person could infer that he was, in fact, exposed to an objectively intolerable risk of harm upon his placement in CB 6.

In his Complaint, Plaintiff claimed that Defendants' failure to provide protection led to him "being stabbed and suffering (PTSD) post traumatic stress disorder, which I now take medication for" (Doc. #1 at 3-4). He further claimed that the stabbing incident caused him to live in fear and to "re-live the event" every day (id. at 5). But these allegations go to Plaintiff's July 2006 PS denial and transfer, not to the December 2006 PS denial and transfer. Plaintiff provided no factual allegations detailing how he suffered after the transfer to CB 6 or how the conditions of confinement there posed a threat to him.

In his response memorandum, Plaintiff averred that, while housed at CB 6, he was subjected to a "constant threat of violence," and he describes one incident where another inmate assaulted him on May 31, 2008 (Doc. #53 at 6-7). The Court finds that, without more, this single incident—arising almost one year after his placement in CB 6—is insufficient to constitute an objectively intolerable risk of harm. And Plaintiff's claim that he was forced to endure a "constant threat of violence" is too general and conclusory

to make the objective showing required on an Eighth Amendment claim. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("summary judgment motion cannot be defeated by relying solely on conclusory allegations").

Moreover, the record demonstrates that Rollins ordered Plaintiff to be transferred out of Central Unit (Doc. #14, Attach. 44). When CB 6 was redesignated as part of Central Unit in February 2008, approximately eight months after Plaintiff's placement there, he should have been moved again in accordance with Rollins' directive. But there is no evidence to suggest that Rollins was aware that Plaintiff remained in CB 6-Central Unit after the February 2008 redesignation; thus, there is nothing to support a finding of deliberate indifference on Rollins' part for the subsequent assault on Plaintiff in May 2008.[4]

In sum, Plaintiff has failed to submit specific facts or evidence to demonstrate that upon his placement in CB 6 as a result of Rollins' appeal denial, Plaintiff was exposed to an objectively intolerable risk of harm. Consequently, Plaintiff cannot satisfy the objective requirement of the deliberate indifference test.

Although the Court need not proceed to the second, subjective, element in the deliberate indifference analysis, even when doing so, it finds that Plaintiff fails on that element as well. The law permits an official who is charged with the knowledge of a risk to prove that he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 511 U.S. at 844. Thus, if an official attempts to verify underlying facts and confirm whether a risk of harm exists, he does not act with deliberate indifference. See id. at 843 n. 8.

Here, Plaintiff relies on a provision within the DI-67 policy that states:

---

[4] Nor is there evidence of deliberate indifference by Rollins' with respect to Plaintiff's July 2008 transfer to SMU I. Plaintiff alleges that he was housed with an inmate from his DNHW list, and that this is proof of ADC's failure to reasonably protect inmates (Doc. #53 at 7). There are no allegations linking Rollins, or Schriro, to the July 2008 transfer. See Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77 (1976).

- 13 -

> in cases of repeated alternate placement failure, staff shall consider the possibility that such failures indicate a general and intractable inability on the part of the inmate to function in any GP for the foreseeable future. In such situations, reviewing officials need not exhaust all possible alternate placements before authorizing PS status (Doc. #53 at 5, citing Doc. #14, Ex. A, Attach. 1 (DO 805.03. § 1.4.3.2)).

There is nothing in the record to show that the reviewing officials, and Rollins in particular, failed to make this consideration; that they declined to authorize PS status does not mean that the PS option was not weighed.

The DI-67 process incorporates numerous review steps and requires extensive documentation. If the relevant DI-67 documents were missing and there was no evidence to show that the process was followed with respect to Plaintiff's December 2006 PS request, there would be a question of fact as to whether or not officials actually verified the facts, investigated the risk of harm, and properly considered whether PS was required. But here, documents in the record show that the policy was followed and that Rollins responded reasonably to the risk by reviewing Plaintiff's PS file, the various recommendations, and the PS Committee's decision (Doc. #14, Ex. A, Attachs. 33-44). Rollins' mistake in the appeal response—noting that the stabbing-assailant was not identified—does not equate to deliberate indifference. See Farmer, 511 U.S. at 835 ("deliberate indifference entails something more than mere negligence"). Also, as noted by Defendants, the hit list on which Plaintiff's name appeared was not discovered until March 2008—well after Rollins made his decision regarding the PS appeal (Doc. #53, Ex. B). And notably, in his ruling on the appeal, Rollins modified the PS Committee's decision to require alternative placement, thereby providing Plaintiff more security that the PS Committee determined was appropriate.

On this record, the Court finds that there is no genuine issue of material fact as to Rollins' liability for deliberate indifference.

### *3. Schriro*

Defendants argue that Plaintiff's claim against Schriro fails because it is based on *respondeat superior* (Doc. #60 at 3). Because there is no *respondeat superior* liability

- 14 -

1 under § 1983, a defendant's position as the supervisor of persons who allegedly violated a
2 plaintiff's constitutional rights does not impose liability. <u>Monell v. New York City Dep't</u>
3 <u>of Social Servs.</u>, 436 U.S. 658, 691-92 (1978); <u>Taylor</u>, 880 F.2d at 1045. But Plaintiff's
4 allegations against Schriro are that she was personally aware of the threat to Plaintiff's
5 safety and failed to take action to prevent further harm to Plaintiff. These facts allege
6 personal participation in the alleged deprivation. <u>Rizzo</u>, 423 U.S. at 370-71, 375-77.
7 Therefore, the claim again Schriro must be analyzed under the Eighth Amendment.

Again, the first step of the analysis requires Plaintiff to show that Schriro's inaction and failure to respond to letters and a telephone call with Plaintiff's mother resulted in Plaintiff's exposure to conditions posing a substantial risk of serious harm. The Court has already determined that Plaintiff's placement in CB 6 did not subject him to conditions that constituted an objectively intolerable risk of harm. As such, Plaintiff's deliberate indifference claim against Schriro fails.

Even if Plaintiff could show that he was exposed to a substantial risk of harm, the subjective element of the deliberate indifference analysis is absent. Plaintiff submits an affidavit from his mother attesting that Schriro called her in the second week in June 2007, and that they discussed Plaintiff's safety concerns (Doc. #53, Ex. D1). Defendants do not rebut this evidence or deny that this telephone conversation took place (<u>see</u> Doc. #60). Nonetheless, there is nothing to indicate that Schriro was indifferent to a potential risk of harm.

State law provides that Schriro may delegate the responsibilities related to PS and the DI-67 policy. Ariz. Rev. Stat. § 41-1604(B)(2)(d). If the record was void of evidence that the DI-67 process was followed, then there would be question of fact whether Schriro properly delegated authority and whether she should have taken measures in response to the telephone call to ensure that Plaintiff's safety concerns were investigated. But that is not the case here. The record reflects that Schriro delegated the responsibilities related to PS, that a full DI-67 was commenced upon Plaintiff's December 2006 PS request, and

1 that—at the time of the telephone call—Rollins was in the process of reviewing

2 Plaintiff's PS file and the PS Committee's decision (see Doc. #45, Ex. B, Schriro Decl.

3 ¶¶ 3, 9; Ex. C, Rollins' Decl. ¶¶ 4-5). Notably, Plaintiff has not demonstrated that Schriro

4 received information that was not already included in the DI-67 documents.

5 The Court therefore finds no genuine issue of material fact as to Schriro's liability

6 for deliberate indifference.

### C. Fourteenth Amendment

8 The Due Process Clause of the Fourteenth Amendment protects prisoners from the

9 deprivation of liberty or property interests without due process of law. Wolff v.

10 McDonnell, 418 U.S. 539, 556 (1974). Liberty interests that entitle a prisoner to due

11 process are generally limited to freedom from restraints that exceed a sentence in an

12 "unexpected matter" or impose an "atypical and significant hardship." Sandin v. Conner,

13 515 U.S. 472, 484 (1995).

14 Plaintiff contends that Defendants have denied him adequate procedural

15 protections because they do not utilize their own policy (Doc. #53 at 12). But Plaintiff

16 makes no showing that he has a protected liberty interest in avoiding alternative

17 placement. He does not have a constitutional right to a particular cell assignment or

18 security classification. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987);

19 Meachum v. Fano, 427 U.S. 215, 224-25 (1976). And there is no evidence suggesting

20 that Plaintiff's placement in CB 6 constituted an "atypical and significant hardship." See

21 Sandin, 515 U.S. at 484.

22 Even supposing that Plaintiff could demonstrate a liberty interest, the DI-67

23 process provides adequate procedural protections. The record before the Court

24 demonstrates that the exhaustive procedures set out in the DI-67 policy were followed in

25 Plaintiff's case (Doc. #14, Ex. A, Attachs. 1, 33-44; Doc. #44, Ex. B, Rollins Decl. ¶¶ 3-

26 5). As argued by Defendants, Plaintiff does not identify any specific deficiency with

27 these procedures; rather, his argument rests on his disagreement with the outcome.

Accordingly, there is no material factual dispute precluding dismissal of the due process claim.

For the above reasons, the Court will grant Defendants' summary judgment motion. The Court need not address Defendants' arguments related to damages and the Eleventh Amendment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. #44).

(2) Defendants' Motion for Summary Judgment (Doc. #44) is **granted**.

(3) Plaintiff's Complaint is dismissed, and the Clerk of Court must enter judgment accordingly.

DATED this 14th day of December, 2009.

*G. Murray Snow*
United States District Judge